**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

**In re:**

**CYNTHIA COLE WILEY-SMITH,**                    **CHAPTER 13**

    **DEBTOR.**                    **CASE NO. 15-60136**


**WELLS FARGO BANK, N.A.,**

    **MOVANT,**

**vs.**

**CYNTHIA COLE WILEY-SMITH**
**JERRY R. SMITH, CODEBTOR**
**and HERBERT L. BESKIN, TRUSTEE,**

    **RESPONDENTS.**

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND CODEBTOR STAY**
**UNDER 11 U.S.C. § 1301(c)(3)**
**(REAL PROPERTY LOCATED AT 310 QUAIL MEADOWS DR, FOREST, VA 24551)**

NOTICE

YOUR RIGHTS MAY BE AFFECTED.  YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE.  (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)

TO: **CYNTHIA COLE WILEY-SMITH, DEBTOR**
  **HERBERT L. BESKIN, TRUSTEE**
  **JERRY R. SMITH, CODEBTOR**

IF YOU DO NOT WISH THE COURT TO GRANT THE RELIEF SOUGHT IN THE MOTION, OR IF YOU WANT THE COURT TO CONSIDER YOUR VIEWS ON THE MOTION, THEN WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ENTRY OF THE PRE-HEARING ORDER, YOU MUST FILE A WRITTEN RESPONSE EXPLAINING YOUR POSITION WITH THE COURT AND SERVE A COPY ON THE MOVANT.  UNLESS A WRITTEN RESPONSE IS FILED AND SERVED WITHIN THIS FOURTEEN (14) DAY PERIOD, THE COURT MAY DEEM OPPOSITION WAIVED, TREAT THE MOTION AS CONCEDED, AND ISSUE AN ORDER GRANTING THE REQUESTED RELIEF WITHOUT FURTHER NOTICE OR HEARING.

IF YOU MAIL YOUR RESPONSE TO THE COURT FOR FILING, YOU MUST MAIL IT EARLY ENOUGH SO THE COURT WILL RECEIVE IT ON OR BEFORE THE EXPIRATION OF THE FOURTEEN (14) DAY PERIOD.

**THE PRELIMINARY HEARING IS SCHEDULED TO BE HELD ON APRIL 28, 2006 AT 9:30 AM IN THE UNITED STATES COURTHOUSE, 1101 COURT STREET, LYNCHBURG, VA 24504, COURTROOM 210.**

  Wells Fargo Bank, N.A. ("Movant") hereby moves this Court, pursuant to 11 U.S.C. § 362 and 11 U.S.C. § 1301(a), for relief from the automatic stay with respect to certain real property of the Debtor and Codebtor having an address of 310 Quail Meadows Dr, Forest, VA 24551 (the "Property"), for all purposes allowed by the Note (defined below), the Deed of Trust (defined

Michael T. Freeman, Esquire
Counsel for Movant
Samuel I White, P.C.
Bar No. 65460
1804 Staples Mill Road,
Suite 200
Richmond, VA 23230
(804) 290-4290
File No. 30160

below), and applicable law, including but not limited to the right to foreclose.  In further support of this Motion, Movant respectfully states:

      1.     This Court has Jurisdiction over this proceeding pursuant to 28 U.S.C. Sections 157 and 1334, 11 U.S.C. 362(d) and 1301(c)(3), and that this matter is a core proceeding.

      2.     A petition under Chapter 13 of the United States Bankruptcy Code was filed with respect to the Debtor on January 30, 2015.

      3.     A Chapter 13 Plan was confirmed on July 1, 2015.

      4.     The Codebtor, Jerry R. Smith has executed and delivered or is otherwise obligated with respect to that certain promissory note in the original principal amount of $247,350.00 (the "Note").  A copy of the Note is attached hereto as <u>Exhibit A</u>.

      5.     Pursuant to that certain Deed of Trust (the "Deed of Trust"), all obligations (collectively, the "Obligations") of the Debtor and the Codebtor under and with respect to the Note and the Deed of Trust are secured by the Property and the other collateral described in the Deed of Trust.  The lien created by the Deed of Trust was perfected by recording of the Deed of Trust in the office of the Clerk of the County of Bedford, Virginia.  A copy of the recorded Deed of Trust is attached hereto as <u>Exhibit B</u>.

      6.     The legal description of the Property is:

> **THAT CERTAIN parcel of land situate, lying and being in Jefferson Magisterial District, Bedford County, Virginia, and designated as Lot 6, on "PLAT OF SUBDIVISION OF IVY HILL, BLOCK 1 OF SECTION 2, JEFFERSON (FORMERLY FOREST) DISTRICT, BEDFORD COUNTY, VIRGINIA", prepared by J. A. Gustin & Associates, dated August 12, 1975, which said plat is recorded with a deed of dedication dated August 12, 1975, the deed being recorded in the Clerk's Office of the Circuit Court of Bedford County, Virginia, in Deed Book 419, Page 727, and the plat being recorded in the aforesaid Clerk's Office in Plat Book 18, pages 64 and 65. The property being known locally as 310 Quail Meadows Drive, Forest, Virginia.**

> **BEING the same property conveyed by Deed dated October 25, 1990, from Thomas Edward Scott and Laura Sharon Scott unto Allison D. Thompson and Sallie P. Thompson, recorded in the aforesaid Clerk's Office in Deed Book 780, at page 562.**

> **FURTHER the same property conveyed by deed dated February 19, 2013 from ALLISON D. THOMPSON and DALLIE F. THOMPSON unto JERRY R. SMITH, to be recorded in the aforesaid Clerk's Office contemporaneously herewith.**

      7.     Wells Fargo Bank, N.A. services the loan on the Property referenced in this Motion.  In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant.  Debtor executed a promissory note secured by a mortgage or deed of trust.  The promissory note is either made payable to Creditor or has been duly indorsed.  Creditor, directly or through an agent, has possession of the promissory note.  Creditor is the original mortgagee or beneficiary or assignee of the mortgage or deed of trust.

8.      As of March 30, 2016, the unpaid principal balance due is $239,510.46 and the outstanding amount of Obligations less any partial payments or suspense balance is $256,868.13.

9.      The following chart sets forth the number and amount of post-petition payments due pursuant to the terms of the Note that have been missed by the Debtor as of March 30, 2016:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 14 | 02/01/2015 | 03/01/2016 | $1,571.01 | $21,994.14 |
| Less post-petition partial payments (suspense balance): | | | | ($0.00) |
| | | | **Total:** | **$21,994.14** |

10.      As of March 30, 2016, the total post-petition arrearage/delinquency is $21,994.14, consisting of (i) the foregoing total of missed post-petition payments in the amount of $21,994.14, plus (ii) the following fees:

| Fee Description | Amount |
|---|---|
| N/A | $0.00 |

11.      The estimated value of the Property is $275,600.00.  The basis for such valuation is: Tax Assessment, a copy of which is attached hereto as <u>Exhibit C</u>.

12.      Cause exists for relief from the automatic stay for the following reasons:

   i.      Movant's interest in the Property is not adequately protected.

13.      In the event the Notice of Hearing contained in this motion sets forth a date more than thirty (30) days beyond the date of the filing of this motion, Movant consents to the extension of the automatic stay imposed by 11 U.S.C. § 362(a) beyond the thirty-day limit imposed by 11 U.S.C. § 362(e), and waives its rights thereunder.

14.      Counsel for Movant certifies that, as a member of the Bar of this Court, counsel represents the above-named Movant and that the information contained herein is true according to the best of my knowledge and belief.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.      Relief from the stay for all purposes allowed by applicable law, the Note, and the Deed of Trust, including but not limited to allowing Movant to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property and any and all other collateral pledged under the Deed of Trust.

2.      That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

3.      That relief be granted as to the Codebtor under 11 U.S.C. § 1301(c)(3) and the Debtor pursuant to 11 U.S.C. § 362(d).

4.      For such other relief as the Court deems proper.

Movant further requests that upon entry of an order granting relief from stay, it be exempted from further compliance with Fed. Rule Bankr. P. 3002.1 in the instant bankruptcy case.

Dated: April 4, 2016.

WELLS FARGO BANK, N.A.

By: **/s/ MICHAEL T. FREEMAN**
Eric D. White, Esquire, Bar No. 21346
Michael T. Freeman, Esquire, Bar No. 65460
Brandon R. Jordan, Esquire, Bar No. 72170
Kimberly B. Lane, Esquire, Bar No. 78720
Johnie R. Muncy, Esquire, Bar No. 73248
Douglas S. Rubin, Esquire, Bar No. 84393
Samuel I. White, P. C.
1804 Staples Mill Road, Suite 200
Richmond, VA 23230
Tel.: (804) 290-4290
Fax: (804) 290-4298
mfreeman@siwpc.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Motion was served by first class mail postage prepaid or email this 4th day of April, 2016 on all necessary parties including Herbert L. Beskin, Trustee, PO Box 2103, Charlottesville, VA 22902; Janice Hansen, Counsel for Debtor, 900 Lakeside Drive, Lynchburg, VA 24501; Cynthia Cole Wiley-Smith, Debtor, 310 Quail Meadows Drive, Forest, VA 24551; and Jerry R. Smith, Codebtor, 3315 Forest Ridge Road, Roanoke, VA 24018 and 310 Quail Meadows Dr, Forest, VA 24551.

**/s/ MICHAEL T. FREEMAN**
Michael T. Freeman, Esquire
Samuel I. White, P. C.

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| In re:<br>**CYNTHIA COLE WILEY-SMITH**<br><br>Debtor. | Chapter 13<br>Case No. 15-60136 |

## DECLARATION IN SUPPORT OF
## MOTION FOR RELIEF FROM AUTOMATIC STAY

I, Jamielle J. Davis, declare under penalty of perjury as follows:

1.    I am a/an Vice President Loan Documentation of Well Fargo Bank, N.A. ("Wells Fargo") and am authorized to sign this declaration on behalf of Wells Fargo. This declaration is provided in support of the Motion for Relief from Stay (the "Motion") filed contemporaneously herewith.

2.    As part of my job responsibilities for Wells Fargo, I have personal knowledge of and am familiar with the types of records maintained by Wells Fargo in connection with the account that is the subject of the Motion (the "Account") and the procedures for creating those types of records. I have access to and have reviewed the books, records and files of Wells Fargo that pertain to the Account and extensions of credit given to the Debtor concerning the property securing such Account.

3.    The information in this declaration is taken from Wells Fargo's business records regarding the Account. The records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; and (b) kept in the course of Wells Fargo's regularly conducted business activities. It is the regular practice of Wells Fargo to create and maintain such records.

4.    Jerry R. Smith has executed and delivered or is otherwise obligated with respect to the attached promissory note (the "Debt Agreement"). Pursuant to the attached Deed of Trust (the "Security Instrument"), all obligations of the Debtor and Codebtor under and with respect to the Debt Agreement and the Security Instrument are secured by the property referenced in the Motion.

5.    As of March 30, 2016, there are one or more defaults in paying post-petition amounts due with respect to the Debt Agreement.

6.    As of March 30, 2016, the unpaid principal balance of the Debt Agreement is $239,510.46.

7.    The following chart sets forth those post-petition payments, due pursuant to the terms of the Debt Agreement, that have been missed by the Debtor as of March 30, 2016:

| Number of Missed Payments | From | To | Missed Principal and Interest | Missed Escrow (if applicable) | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| 14 | 02/01/2015 | 03/01/2016 | $1,128.05 | $442.96 | $1,571.01 | $21,994.14 |
| Less post-petition partial payments (suspense balance): | | | | | | ($0.00) |
| | | | | | Total: | $21,994.14 |

8.    As of March 30, 2016, the total post-petition arrearage/delinquency and amount necessary to cure the post-petition default alleged in the Motion is $21,994.14, consisting of (i) the foregoing total of missed post-petition payments in the amount of $21,994.14, plus (ii) the following post-petition fees:[1]

| Description | Amount |
|---|---|
| N/A | N/A |

9.    The following documents are attached as exhibits and incorporated herein by reference:

(a)    Attached hereto as Exhibit A is a true and correct copy of the Debt Agreement.

(b)    Attached hereto as Exhibit B is a true and correct copy of the Security Instrument.

(c)    Attached hereto as Exhibit 1 is a post-petition payment history.

(d)    Attached hereto as Exhibit 2 is an addendum listing all fees and charges assessed to the account of the Debtor post-petition.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*Jamielle J. Davis*

Jamielle J. Davis
Vice President Loan Documentation
Wells Fargo Bank, N.A.

---

[1]    The total of missed post-petition payments for this impounded loan include any missed escrow payments. Such missed escrow payments include amounts assessed for taxes and insurance and any previously assessed escrow shortage amount (if applicable). To avoid duplication, post-petition advances (if any) made for insurance, real estate taxes, or similar charges are not listed separately to the extent such advances would have been paid from the missed escrow payments. As part of the next annual RESPA analysis, Wells Fargo will determine whether the escrow payments assessed to the debtor (including the missed escrow payments) result in a projected escrow shortage or overage. All rights are hereby reserved to assert or request any escrow amounts in accordance with RESPA and the total post-petition arrearage/delinquency is qualified accordingly.

# Exhibit 1

**Post-Petition Payment History**

| PAYMENT DUE DATE | AMOUNT DUE | DATE FUNDS RECEIVED | AMOUNT RECEIVED | DATE FUNDS APPLIED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | AMOUNT APPLIED TO FEES | AMOUNT APPLIED TO CREDIT INSURANCE | TOTAL AMOUNT APPLIED | SUSPENSE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/1/2015 | $1,571.01 | | | | | | | | | | |
| 3/1/2015 | $1,571.01 | | | | | | | | | | |
| 4/1/2015 | $1,571.01 | | | | | | | | | | |
| 5/1/2015 | $1,571.01 | | | | | | | | | | |
| 6/1/2015 | $1,571.01 | | | | | | | | | | |
| 7/1/2015 | $1,571.01 | | | | | | | | | | |
| 8/1/2015 | $1,571.01 | | | | | | | | | | |
| 9/1/2015 | $1,571.01 | | | | | | | | | | |
| 10/1/2015 | $1,571.01 | | | | | | | | | | |
| 11/1/2015 | $1,571.01 | | | | | | | | | | |
| 12/1/2015 | $1,571.01 | | | | | | | | | | |
| 1/1/2016 | $1,571.01 | | | | | | | | | | |
| 2/1/2016 | $1,571.01 | | | | | | | | | | |
| 3/1/2016 | $1,571.01 | | | | | | | | | | |
| TOTAL: | $21,994.14 | | $0.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

## **Exhibit 2**

## Post-Petition Fee Breakdown Addendum

| DESCRIPTION OF FEE OR CHARGE | DATE INCURRED | AMOUNT |
|---|---|---|
| n/a | n/a | n/a |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
| TOTAL FEES AND CHARGES DUE |  | $0.00 |



Exhibit A

# NOTE

**March 7, 2013**　　　　**Forest**　　　　　　　　**VIRGINIA**
[Date]　　　　　　　　　　[City]　　　　　　　　　　　[State]

**310 Quail Meadows Drive, Forest, VA  24551**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **247,350.00**　　　(this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Embrace Home Loans, Inc.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of　　　**3.625** %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st**　　　day of each month beginning on **May 1, 2013**　　　. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **04/01/43**　　　, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **25 Enterprise Center, Newport, RI 02842**
　　　　　　　　　　　　　　　　　　　　　　or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ **1,128.05**　　　.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge

VIRGINIA FIXED RATE NOTE - Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services　　　　3/6/2013　　　3:42 PM

7670
Form 3247 1/01
VMP5N(VA) (1007)
Page 1 of 3

Represents Redacted Information

shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15**                    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be                    **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor and waive the benefit of the homestead exemption as to the Property described in the Security Instrument (as defined below). "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

VIRGINIA FIXED RATE NOTE - Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services                    3/6/2013        3:42 PM

7670
Form 3247 1/01
VMP5N(VA) (1007)
Page 2 of 3

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Jerry R. Smith                  -Borrower                                           -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                           -Borrower

*[Sign Original Only]*

☐  Refer to the attached *Signature Addendum* for additional parties and signatures.

This is to certify that this is the Note described in and secured by a Deed of Trust dated **March 7, 2013**,
on the Property located in **Forest**                                    , Virginia.

My Commission Expires:  10-31-13

Notary Public
Notary registration number: **247945**
Date of notarization: **March 7, 2013**
Place of notarization: Bedford County, STATE OF VIRGINIA

ROBERT L. WARREN
NOTARY PUBLIC
REG. #247945
MY COMMISSION EXPIRES
10/31/2013
COMMONWEALTH OF VIRGINIA

Pay to the order of

Without recourse
Embrace Home Loans, Inc.

Cheryl E. Miller
Vice President

VIRGINIA FIXED RATE NOTE - Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services          3/6/2013          3:42 PM

7670
Form 3247 1/01
VMP5N(VA) (1007)
Page 3 of 3

I 3 0 0 0 2 6 4 I

**Return To:**
POPLAR FOREST SETTLEMENT SERVICES, LLC
15421 FOREST RD. STE. C
FOREST, VA 24551-

**Tax Map Reference #:**

**RPC/Parcel ID #:**

Exhibit
B

**Prepared By:**
Ethan Ribb
Embrace Home Loans, Inc.
103A Paulette Circle, Lynchburg, VA 24502-3150
VA State Bar Number (if applicable):
Amount of Consideration:

Return to:
Poplar Forest
Settlement Services
P. O. Box 749
Forest, VA 24551

## Deed of Trust

**MIN**

The following information, as further defined below, is provided in accordance with Virginia law:

This Deed of Trust is given by **Jerry R Smith**

, as

Borrower (trustor), to **Joseph V. Buonassissi**
**11350 Random Hills Road, Ste. 600, Fairfax, VA 22030**

, as

Trustee, for the benefit of Mortgage Electronic Registration Systems, Inc. as beneficiary.

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated **March 7, 2013**          , together with all Riders to this document.

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ® Bankers Systems ™
Wolters Kluwer Financial Services                3/6/2013          3:42 PM

7670
Form 3047 1/01
VMP6A(VA) (1205).01
Page 1 of 19

Represents Redacted Information

**(B)** "Borrower" is **Jerry R Smith**

Borrower is the trustor under this Security Instrument.

**(C)** "Lender" is **Embrace Home Loans, Inc.**

Lender is a **Corporation**
organized and existing under the laws of **Rhode Island, USA**
Lender's address is **25 Enterprise Center, Newport, RI 02842**

**(D)** "Trustee" is **Joseph V. Buonassissi**

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or
Virginia-chartered corporation whose principal office is located in Virginia.  Trustee's address is
**11350 Random Hills Road, Ste. 600, Fairfax, VA 22030**
"Trustee" is **John A. Moffett, Jr.**

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or
Virginia-chartered corporation whose principal office is located in Virginia.  Trustee's address is
**11350 Random Hills Road, Ste. 600, Fairfax, VA 22030**

**(E)** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary
under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and
has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888)
679-MERS.

**(F)** "Note" means the promissory note signed by Borrower and dated **March 7, 2013**     . The
Note states that Borrower owes Lender **two hundred forty-seven thousand three
hundred fifty and 00/100**
Dollars (U.S. $**247,350.00**    ) plus interest. Borrower has promised to pay this debt in
regular Periodic Payments and to pay the debt in full not later than **04/01/43**     . The
interest rate stated in the Note is **three and five-eighths**

percent (    **3.625** %). If this Security Instrument is an adjustable rate mortgage loan, this initial
rate is subject to change in accordance with the attached Adjustable Rate Rider.

**(G)** "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ® Bankers Systems™
Wolters Kluwer Financial Services          3/6/2013       3:42 PM
7670
Form 3047 1/01
VMP6A(VA) (1205).01
Page 2 of 19

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | PM I |

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ® Bankers Systems™
Wolters Kluwer Financial Services          3/6/2013          3:42 PM

7670
Form 3047 1/01
VMP6A(VA) (1205).01
Page 3 of 19

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County**

of **Bedford**

*(Type of Recording Jurisdiction)*          *(Name of Recording Jurisdiction):*
See Attached Exhibit A

which currently has the address of **310 Quail Meadows Drive**

*(Street)*

**Forest, Bedford**                    *(City/County),* Virginia **24551**      *(Zip Code)*
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ® Bankers Systems™
Wolters Kluwer Financial Services          3/6/2013          3:42 PM
7670
Form 3047 1/01
VMP6A(VA) (1205).01
Page 4 of 19

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
   Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

   Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ® Bankers Systems™
Wolters Kluwer Financial Services                                    3/6/2013          3:42 PM

7670
Form 3047 1/01
VMP6A(VA) (1205).01
Page 5 of 19

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.    Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ® Bankers Systems™
Wolters Kluwer Financial Services                    3/6/2013          3:42 PM

7670
Form 3047 1/01
VMP6A(VA) (1205).01
Page 6 of 19

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ® Bankers Systems™
Wolters Kluwer Financial Services                    3/6/2013          3:42 PM

7670
Form 3047 1/01
VMP6A(VA) (1205).01
Page 7 of 19

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ® Bankers Systems™
Wolters Kluwer Financial Services                    3/6/2013          3:42 PM

7670
Form 3047 1/01
VMP6A(VA) (1205).01
Page 8 of 19

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

   Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ® Bankers Systems™
Wolters Kluwer Financial Services                    3/6/2013          3:42 PM

7670
Form 3047 1/01
VMP6A(VA) (1205).01
Page 9 of 19

do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

7670

VMP ® Bankers Systems™

Form 3047 1/01

Wolters Kluwer Financial Services                    3/6/2013          3:42 PM

VMP6A(VA) (1205).01
Page 10 of 19

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b)  **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ® Bankers Systems™
Wolters Kluwer Financial Services                    3/6/2013        3:42 PM

7670
Form 3047 1/01
VMP6A(VA) (1205).01
Page 11 of 19

Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ® Bankers Systems™
Wolters Kluwer Financial Services                3/6/2013            3:42 PM

7670
Form 3047 1/01
VMP6A(VA) (1205).01
Page 12 of 19

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes
Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall
obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be
released from Borrower's obligations and liability under this Security Instrument unless Lender agrees
to such release in writing. The covenants and agreements of this Security Instrument shall bind
(except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with
Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under
this Security Instrument, including, but not limited to, attorneys' fees, property inspection and
valuation fees. In regard to any other fees, the absence of express authority in this Security
Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging
of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or
by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so
that the interest or other loan charges collected or to be collected in connection with the Loan exceed
the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to
reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which
exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by
reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund
reduces principal, the reduction will be treated as a partial prepayment without any prepayment
charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance
of any such refund made by direct payment to Borrower will constitute a waiver of any right of action
Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must
be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to
have been given to Borrower when mailed by first class mail or when actually delivered to
Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice
to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the
Property Address unless Borrower has designated a substitute notice address by notice to Lender.
Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a
procedure for reporting Borrower's change of address, then Borrower shall only report a change of
address through that specified procedure. There may be only one designated notice address under this
Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by
mailing it by first class mail to Lender's address stated herein unless Lender has designated another
address by notice to Borrower. Any notice in connection with this Security Instrument shall not be
deemed to have been given to Lender until actually received by Lender. If any notice required by this
Security Instrument is also required under Applicable Law, the Applicable Law requirement will
satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be
governed by federal law and the law of the jurisdiction in which the Property is located. All rights
and obligations contained in this Security Instrument are subject to any requirements and limitations
of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by
contract or it might be silent, but such silence shall not be construed as a prohibition against

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ® Bankers Systems™
Wolters Kluwer Financial Services                              3/6/2013          3:42 PM

7670
Form 3047 1/01
VMP6A(VA) (1205).01
Page 13 of 19

agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ® Bankers Systems™
Wolters Kluwer Financial Services                3/6/2013        3:42 PM

7670
Form 3047 1/01
VMP6A(VA) (1205).01
Page 14 of 19

remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ® Bankers Systems™
Wolters Kluwer Financial Services                    3/6/2013          3:42 PM

7670
Form 3047 1/01
VMP6A(VA) (1205).01
Page 15 of 19

to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

    **If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by Applicable Law. Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with Applicable Law. Lender or its designee may purchase the Property at any sale.**

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ® Bankers Systems™
Wolters Kluwer Financial Services                    3/6/2013         3:42 PM

7670
Form 3047 1/01
VMP6A(VA) (1205).01
Page 16 of 19

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee; (b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority over the lien of this Security Instrument, including the due pro rata thereof for the current year; (c) to discharge in the order of their priority, if any, the remaining debts and obligations secured by this Security Instrument, and any liens of record inferior to this Security Instrument under which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be paid to Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ® Bankers Systems™
Wolters Kluwer Financial Services                3/6/2013            3:42 PM

7670
Form 3047 1/01
VMP6A(VA) (1205).01
Page 17 of 19

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____   3-7-13
Jerry R Smith                     Date
                                  (Seal)


_____   _____
                                  Date
                                  (Seal)


_____   _____
                                  Date
                                  (Seal)


_____   _____
                                  Date
                                  (Seal)


☐  Refer to the attached *Signature Addendum* for additional parties and signatures.

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ® Bankers Systems™
Wolters Kluwer Financial Services        3/6/2013        3:42 PM

7670
Form 3047 1/01
VMP6A(VA) (1205).01
Page 18 of 19

**Acknowledgment**
**State of VA**
**County/City of Bedford**
This instrument was acknowledged before me on **March 7, 2013**        by **Jerry R Smith**

_Notary Public_

My commission expires: *10-31-13*
Notary Registration Number: *247945*

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ® Bankers Systems™
Wolters Kluwer Financial Services        3/6/2013        3:42 PM

7670
Form 3047 1/01
VMP6A(VA) (1205).01
Page 19 of 19

# MORTGAGE INSURANCE RIDER

This Mortgage Insurance Rider is made this **7th** day of **March, 2013** ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to
secure Borrower's **Fixed**
[identify type of note, *e.g.* fixed rate] note (the "Note") to **Embrace Home Loans, Inc.**

("Lender") of the same date and covering the Property
described in the Security Instrument and located at:

**310 Quail Meadows Drive, Forest, VA  24551**

[Property Address]

The Security Instrument is amended by adding the following at the end of Section 10 (if the Security
Instrument has a form date at the lower right corner of 3/99 or later) or Section 8 (if the Security
Instrument has a form date at the lower right corner that is earlier than 3/99):

> Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses
> it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the
> Mortgage Insurance.
>
> Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and
> may enter into agreements with other parties that share or modify their risk, or reduce losses.
> These agreements are on terms and conditions that are satisfactory to the mortgage insurer and
> the other party (or parties) to these agreements. These agreements may require the mortgage
> insurer to make payments using any source of funds that the mortgage insurer may have
> available (which may include funds obtained from Mortgage Insurance premiums).
>
> As a result of these agreements, Lender, any purchaser of the Note, another insurer, any
> reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or
> indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's
> payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's

**7670**

**Multistate Mortgage Insurance Rider-Single Family-Fannie Mae Uniform Instrument**

**-11R** (0004)       Form **3160  4/00**
Page **1 of 3**       Initials:
VMP MORTGAGE FORMS - (800)521-7291

risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(A) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(B) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

7670

Initials:

(VMP)®-11R (0004)                    Page 2 of 3                    Form 3160 4/00

By signing below, Borrower accepts this Mortgage Insurance Rider and agrees that it amends and supplements the Security Instrument.

_____ (Seal)          _____ (Seal)
Jerry R Smith                   -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

                                                                                 7670

VMP®-11R (0004)                    Page 3 of 3                          Form 3160 4/00

# EXHIBIT A

## Property Description

THAT CERTAIN parcel of land situate, lying and being in Jefferson Magisterial District, Bedford County, Virginia, and designated as Lot 6 on "PLAT OF SUBDIVISION OF IVY HILL, BLOCK 1 OF SECTION 2, JEFFERSON (FORMERLY FOREST) DISTRICT, BEDFORD COUNTY, VIRGINIA", prepared by J. A. Gustin & Associates, dated August 12, 1975, which said plat is recorded with a deed of dedication dated August 12, 1975, the deed being recorded in the Clerk's Office of the Circuit Court of Bedford County, Virginia, in Deed Book 419, Page 727, and the plat being recorded in the aforesaid Clerk's Office in Plat Book 18, pages 64 and 65. The property being known locally as 310 Quail Meadows Drive, Forest, Virginia.

BEING the same property conveyed by Deed dated October 25, 1990, from Thomas Edward Scott and Laura Sharon Scott unto Allison D. Thompson and Sallie P. Thompson, recorded in the aforesaid Clerk's Office in Deed Book 780, at page 562.

FURTHER the same property conveyed by deed dated February 19, 2013, from ALLISON D. THOMPSON and SALLIE F. THOMPSON unto JERRY R. SMITH, to be recorded in the aforesaid Clerk's Office contemporaneously herewith.

☑ RETURNED
☐ MAILED

Poplar Forest

$ 880.67

INSTRUMENT #130002641
RECORDED IN THE CLERK'S OFFICE OF
BEDFORD COUNTY ON
MARCH 8, 2013 AT 09:13AM

CATHY C. HOGAN, CLERK
RECORDED BY: CMM


23

·150·002226

Assessor's/Tax ID ██████
Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
MAC: N9289-016
PO BOX 1629
EAGAN, MN  55121-4400

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Bedford, Virginia
  "SMITH"

MIN # ██████ SIS #: 1-888-679-6377

Date of Assignment: March 9th, 2015
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR EMBRACE HOME LOANS, INCORPORATED, ITS SUCCESSORS AND ASSIGNS at P.O. BOX 2026, FLINT, MI 48501, 1901 E VOORHEES ST STE C, DANVILLE, IL 61834
Assignee: WELLS FARGO BANK, N.A. at 1 HOME CAMPUS, DES MOINES, IA  50328

Executed By: JERRY R SMITH  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR EMBRACE HOME LOANS, INCORPORATED, ITS SUCCESSORS AND ASSIGNS
  Trustee:  JOSEPH V. BUONASSISSI JOHN A. MOFFETT, JR. Date of Deed of Trust:  03/07/2013 Recorded: 03/08/2013  as instrument No.: 130002641  In Bedford County, State of Virginia.

Property Address: 310 QUAIL MEADOWS DRIVE, FOREST, VA  24551

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $247,350.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Deed of Trust.

   TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust.  IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:
   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR EMBRACE HOME LOANS, INCORPORATED, ITS SUCCESSORS AND ASSIGNS
On  3/9/15

By:
  Thomas Sutsada Sananikone
Assistant Secretary

STATE OF Minnesota
COUNTY OF Dakota

On  3/9/15 , before me,  Brian C. Wilson , a Notary Public in the State of Minnesota, personally appeared  Thomas Sutsada Sananikone , Assistant Secretary being duly sworn of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

  Brian C. Wilson
Notary Expires: 1/31/2016

BRIAN C. WILSON
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2016
(This area for notarial seal)

PREPARED BY: WELLS FARGO BANK, N.A.

☐ RETURNED
☑ MAILED  21.06
Wells Fargo Home Mortgage
*HB1*HB1WFEM*03/09/2015 08:25:05 AM* WFEM01WFEMA000000000000001308311* VABEDFO* VASTATE_TRUST_ASSIGN*ASSR **SOVEREIGN*

INSTRUMENT #150002226
RECORDED IN THE CLERK'S OFFICE OF
BEDFORD COUNTY ON
MARCH 16, 2015 AT 11:20AM

CATHY C. HOGAN, CLERK
RECORDED BY: RNO

Represents Redacted Information





# Tax & Parcel Information

View Sketch

Go to map

**Jump directly to the parcel on our GIS system**
(Works with IE only. Map viewer may be required)

view

## Ownership Info

| Acct Num | Item | Owner's Name | Acquired | Purchase Price | Transaction Type |
|---|---|---|---|---|---|
| ██████ | 1 | SMITH JERRY R & WILEY CYNTHIA COLE<br>310 QUAIL MEADOWS DR<br>FOREST, VA   24551 | 8/23/2013 | $0 | Name Change |
| | 1 | SMITH JERRY R<br>PO BOX 2129<br>FOREST, VA   24551 | 3/8/2013 | $255,000 | Single parcel |
| | 2 | THOMPSON ALLISON D &<br>2 LACEBARK LN<br>BLUFFTON, SC   29909 | 1/1/1995 | $0 | No previous sale |
| | 1 | THOMPSON ALLISON D &<br>2 LACEBARK LN<br>BLUFFTON, SC   29909 | 1/1/1995 | $0 | No previous sale |
| | 1 | THOMPSON ALLISON D &<br>310 QUAIL MEADOWS DR<br>FOREST, VA   24551 | 1/1/1992 | $0 | No previous sale |

## Tax Info

| Tax Year | Land Value | Improvement Value | Total Value |
|---|---|---|---|
| 2016 | $60,000 | $215,600.00 | $275,600 |
| 2015 | $60,000 | $215,600.00 | $275,600 |
| 2014 | $40,000 | $272,300.00 | $312,300 |
| 2013 | $40,000 | $268,700.00 | $308,700 |

Represents Redacted Information

| 2012 | $40,000 | $268,700.00 | $308,700 |
| 2011 | $40,000 | $268,700.00 | $308,700 |
| 2010 | $40,000 | $271,100.00 | $311,100 |
| 2009 | $40,000 | $271,100.00 | $311,100 |
| 2008 | $40,000 | $271,100.00 | $311,100 |
| 2007 | $40,000 | $271,100.00 | $311,100 |
| 2006 | $35,000 | $241,600.00 | $276,600 |
| 2005 | $35,000 | $241,600.00 | $276,600 |
| 2004 | $35,000 | $241,600.00 | $276,600 |
| 2003 | $35,000 | $241,600.00 | $276,600 |
| 2002 | $30,000 | $230,300.00 | $260,300 |
| 2001 | $30,000 | $230,300.00 | $260,300 |
| 2000 | $30,000 | $230,300.00 | $260,300 |
| 1999 | $30,000 | $230,300.00 | $260,300 |
| 1998 | $30,000 | $189,700.00 | $219,700 |

**Tax Status:**    No taxes are overdue on this property

**Land Use Status:** This property does not participate
in the land use program

## Administrative Info

**Parcel Number (RPC)** ███████
**Map Number** 
**Year Built:** 1977
**Legal Description:** IVY LT 6 SC 2 BK 1
**Zoning**
**Zoning Description**
**PC Description**

**Value Effective Date:** 1/1/2016
**Purchase Price:** $0.00
**Deed Book:**
**Deed Book Page**
**Document Number:** 130009703

## Site Description

**Acres:**    0.9000
**Number of Dwellings:**    1
**Site Feature 1:**

**Site Feature 2:**
**Curb:** *N/A*
**Gutter:** *N/A*
**Sidewalk:** *N/A*

## Improvements

| | |
|---|---|
| **Structure Use:** | DWELLING |
| **Building Type:** | 111 Contemporary |
| **Year Built:** | 1977 |
| **Finished Size:** | 3176 |
| **Foundation:** | 3/4 Bsmt, 1/4 Crawl |
| **Stories:** | 2 |
| **Frame material:** | Wood frame |
| **Exterior Cover:** | Wood siding |
| **Number of Rooms:** | 8 |
| **2-fixture half baths:** | 1 |
| **3-fixture full baths** | 3 |
| **4-fixture full baths:** | 0 |
| **Heating Type:** | Heat pump |
| **Central Air?** | Y |
| **Attic:** | None |
| **Attic Finished Area:** | 0 |
| **Basement Area:** | 1272 |
| **Basement Finished Area:** | 60 |
| **Attached Garage Area:** | 600 |
| **Detached Garage Area** | |
| **Attached Carport Area:** | |
| **Utility Rooms:** | |
| **Enclosed Porch Area:** | 0 |
| **Open Porch Area:** | 65 |
| **Deck Area:** | 600 |
| **Prefab Fireplaces:** | |
| **Masonry Fireplaces:** | Y |
| **Roof Material:** | Asphalt shingles |
| **Roof Type:** | Gable |

Online Map
Follow the link to search for this property on our
online GIS system.

View Sketch